NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240664-U

NO. 4-24-0664

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 19, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| BRIAN R. CHILDERS, | ) | No. 24CF197 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court did not abuse its discretion in denying defendant pretrial
release.

(2) Defendant's detention is not barred by collateral estoppel.

¶ 2    Defendant, Brian R. Childers, appeals the trial court's order denying him pretrial

release under section 110-6.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS

5/110-6.1(a) (West 2022)), hereinafter as amended by Public Acts 101-652, § 10-255 and

102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. Defendant

argues the court abused its discretion in granting the State's petition to deny him pretrial release

and the court should have dismissed the State's petition under the doctrine of collateral estoppel.

We affirm.

¶ 3                               I. BACKGROUND

¶ 4          This appeal involves defendant's March 18, 2024, conduct in two counties: Peoria County and Tazewell County. In Peoria County, defendant was charged on March 19, 2024, with aggravated assault. The State alleged defendant displayed a handgun while at 610 South Western Avenue in Peoria, Illinois, placing Terravis Ward, a police officer, in reasonable apprehension of receiving a battery. As charged, the aggravated assault was a Class 4 felony.

¶ 5          In the Peoria County case, the State sought the pretrial detention of defendant. At the hearing on the State's request, the State proffered Officer Ward attempted to conduct a traffic stop of a Honda pickup that defendant was driving. After Officer Ward activated his lights and siren, the pickup sped away from him. A short time later, Officer Ward saw the pickup pull into a parking lot on Western Avenue. Officer Ward approached defendant. Defendant pointed a "compact-style handgun" at Officer Ward, returned to his pickup, and drove away. Officers later spoke with Leah Sloan, who had been in the pickup with defendant. Officers ultimately found defendant at the Par-A-Dice Casino in East Peoria, Illinois, where he was taken into custody. He was found in possession of a handgun and arrested by the Tazewell County Police Department. Defendant admitted pointing the gun at Officer Ward. The pretrial report indicates defendant scored a 2 out of 14 on the pretrial risk assessment, indicating he was suitable for pretrial supervision. The trial court denied the State's petition for pretrial detention.

¶ 6          In Tazewell County, on March 22, 2024, defendant was charged with three offenses for the events occurring on March 18, 2024. Count 1 charges defendant committed armed violence (720 ILCS 5/33A-2(a) (West 2022)), a Class X felony. Counts 2 and 3 allege defendant committed unlawful possession of methamphetamine (720 ILCS 646/60(a)(1), (a)(3) (West 2022)).

¶ 7        That same day, the State sought the pretrial detention of defendant. Defendant responded by filing a motion to dismiss based on collateral estoppel. Defendant asserted because the Peoria County court had considered the same issues and ruled pretrial detention was not appropriate, the State could not seek his detention on the same issues in Tazewell County.

¶ 8        The trial court held a hearing on the motion to dismiss the State's petition and the issue of pretrial detention. The court began by addressing the motion to dismiss. For that motion, defendant emphasized the case, though occurring in two counties, was the result of "one elongated incident." The court denied the petition upon finding no issue preclusion. The court emphasized the Code involves consideration of the " '[n]ature and circumstances of the offense charged,' " and the charged offenses were different in the two cases.

¶ 9        On the matter of the State's petition to deny defendant pretrial release, the State presented testimony and made a proffer to detain defendant under both the dangerousness and willful-flight standards. The State first called Officer Ward. According to Officer Ward, he was on patrol at 5 a.m. on March 18, 2024, when he observed a Honda pickup parked in front of 2700 West Starr Street in Peoria. The house at that address "seemed like a flop house" in which illegal narcotics activity occurred. When the pickup left the residence, Officer Ward followed. Before turning onto Western Avenue, the driver of the pickup did not activate a turn signal and nearly caused an accident. Officer Ward attempted a traffic stop. After Officer Ward activated his overhead lights and siren, the pickup "[t]ook off at a high rate of speed." Officer Ward turned off his lights and sirens and stopped pursuit. Officer Ward continued to patrol the area and located the pickup in a parking lot within approximately one minute. Officer Ward contacted dispatch and then reactivated his lights. Officer Ward exited his squad car and approached the driver's side of the pickup. Officer Ward asked defendant to step out of the vehicle. Defendant did not

comply. The officer then unholstered his sidearm and pointed it in defendant's direction. Defendant responded by "produc[ing] a small compact handgun and pointed it directly at" Officer Ward. Officer Ward, who feared for his life, retreated to the passenger side tailgate of the pickup and held his firearm directly at the driver's side. Defendant drove away. Officer Ward returned to 2700 West Starr Street and spoke to Sloan. Sloan identified defendant as the driver of the pickup. She said she had been riding with him and asked him to drop her off, as "he was acting erratic, appeared to be intoxicated, speeding, and driving recklessly through the city."

¶ 10 The State then made a proffer in support of its petition. According to the proffer, when defendant pulled the gun on Officer Ward, defendant said, "Don't f*** with me, Officer." Defendant was found midmorning, around checkout time, outside the Par-A-Dice Casino in Tazewell County. Because officers knew defendant had a gun, they drew their weapons. Officers were ordering him to the ground, and defendant stood there for several minutes, "quietly drinking his coffee." The State emphasized defendant was from Alabama and not an Illinois resident. When defendant was arrested, approximately 18 grams of methamphetamine were found in his belongings inside his hotel room.

¶ 11 Defense counsel emphasized there was no physical altercation at the time of defendant's arrest and thus no evidence of violence in defendant's Tazewell County behavior. Defendant's father had recently died. Defense counsel argued the pretrial bond report from Peoria County shows defendant scored a 2 out of a possible 14, showing him to be a low risk for flight or future offenses.

¶ 12 Defense counsel called Brian Long, a Tazewell County probation officer, to testify regarding the pretrial investigation report he prepared for defendant's case. Officer Long prepared defendant's report on March 25, 2024. Officer Long used the Revised Virginia Pretrial

- 4 -

Risk Assessment Instrument and found defendant's risk of pretrial misconduct was a 10 out of 14. Officer Long testified, if the charges for Peoria County and Tazewell County were made at the same time, defendant would have scored a 6 out of 14. Officer Long testified the drug-possession charges would have scored at 3 points, criminal history at 2 points, and unemployment at 1 point. With this adjustment, defendant showed a 90% likelihood of appearing in court and not committing an additional offense. However, given defendant was charged with a Class X felony, Officer Long's recommendation at the end of the report would not change. Officer Long's pretrial report concluded with the following sentence: "Based on the defendant's risk of misconduct and the nature of the offense, Pretrial Services is unable to provide reasonable assurance of the defendant's future compliance with conditions of release."

¶ 13        Defense counsel noted defendant was cooperative during the three days he was on pretrial supervision between his release from Peoria County and his arrest in Tazewell County. Defense counsel requested defendant be released with the same conditions imposed in Peoria County, such as home confinement. According to the pretrial investigation report, defendant, a lifelong resident of Alabama, had been staying with his cousin in Peoria since January 2024.

¶ 14        The trial court granted the State's petition. The court found the State proved by clear and convincing evidence the proof was evident and presumption great defendant committed the qualifying offense, a fact conceded by defendant. The court further noted defendant had access to weapons and despite denying substance-abuse issues, he was found with 18 grams of methamphetamine and was driving recklessly through the city. Defendant also had a prior conviction for driving under the influence (DUI). The court found the State proved by clear and convincing evidence defendant poses a real and present threat to the safety of the community, including the police. The court further found the State proved willful flight:

"The defendant has no ties to the community here. He just came here in January. He is staying in a hotel. He indicates he lives with his father. The other one he's staying with his cousin. And his whole life he has lived in Alabama. We're on a Class X felony punishable by up to 15 years."

The court further found no condition or combination of conditions could mitigate the threat. The court noted defense counsel was correct in that the information for this case was available to the Peoria County court as well but found the difference in the charges filed was key, emphasizing defendant, in Tazewell County, was charged with a Class X felony and methamphetamine-possession charges.

¶ 15       After the hearing, the trial court also entered a written detention order. The court found defendant poses a real and present threat and checked the following boxes to support its finding: "Violent nature of the offense"; "Alleged use of a weapon"; "Identity of those to whom Defendant poses a threat, and the nature of the threat"; "Defendant being known to possess weapons, or have access to weapons"; and "Defendant's history of violent/abusive behavior." For the finding the threat of defendant's release cannot be mitigated by any release condition or combination of conditions, the court added the following: "Articulable facts of the case - reasons marked above and for reasons stated in the record."

¶ 16       This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18       On appeal, defendant first contends the State presented no argument or evidence as to why he could not be released on conditions, despite the fact the Peoria County court found defendant could be released on conditions based on similar facts resulting in the charges. Defendant argues the State did not argue or prove no condition or combination of conditions can

mitigate any threat. Defendant maintains the trial court improperly relied on its baseless finding defendant had a significant history of alcohol and substance abuse, as his only offense was a DUI from 2000. Defendant further contends the court's ruling was based primarily on facts occurring in Peoria County during the attempted traffic stop as reasons to deny him pretrial release but failed to explain why the Peoria County court's decision finding pretrial conditions can be imposed was erroneous. Defendant further highlights his minimal criminal history, the absence of any failures to appear, no reported violations of conditions of release, and his successful use of the GPS monitor.

¶ 19 Under the Code, courts presume all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). Before the State may overcome that presumption, the State must prove multiple elements by clear and convincing evidence. One is to prove "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* §§ 110-6.1(a), (e)(2). For this element, the Code gives the trial court broad discretion in choosing what factors to consider. See *id.* § 110-6.1(g) (setting forth factors a trial court may consider when considering dangerousness). These factors include the nature and circumstances of the offense charged (*id.* § 110-6.1(g)(1)), the defendant's history and characteristics, including whether there is evidence of violent, abusive or assaultive behavior (*id.* § 110-6.1(g)(2)(A)), and whether the defendant is known to possess or have access to any weapon (*id.* § 110-6.1(g)(7)). Defendant does not challenge the determination he poses a threat to the community and the police.

¶ 20 In addition, before pretrial release may be denied under the dangerousness standard, subsection (e)(3)(i) of the Code requires the State prove "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate *** the

real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3)(i). In its detention order, the trial court must "make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat *** based on the specific articulable facts of the case." *Id.* § (h)(1). We are mindful trial-court decisions and findings related to pretrial detention are reviewed for an abuse of discretion. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 35. This court will find an abuse of discretion if we conclude the trial court's decision is unreasonable, arbitrary, or fanciful or we find no reasonable person would agree with that decision. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 21        First, we find unpersuasive the argument the State did not prove this element based on the fact it did not argue or present evidence no conditions or combination of conditions could mitigate defendant's threat. Proof of the dangerousness standard does not require the State to *argue* the no-conditions element is satisfied. The Code requires the State to *prove* the no-conditions element "by clear and convincing evidence." 720 ILCS 5/110-6.1(e)(3)(i) (West 2022). As shown below, the State proffered and presented evidence relevant to this element.

¶ 22        Next, we find no abuse of discretion in the trial court's conclusion the no-conditions element was sufficiently proved. The State's proffer and testimony by Officer Ward shows defendant's disregard for authority and gives support to the conclusion defendant would not abide by conditions of release. The proffer and testimony further shows if defendant did not comply and an arrest would be necessary, the lives of police officers would be endangered. The circumstances of the offenses establish defendant possessed a weapon and for minutes disregarded police orders in a public place. Defendant had done so after driving

- 8 -

recklessly and brandishing a weapon and threatening an officer attempting to stop his reckless behavior. The record supports the court's finding defendant was not credible about his lack of a drug or alcohol problem given the record shows he had a DUI conviction, albeit this was an older offense, and he was in possession of a Class 1 felony amount of methamphetamine and was driving erratically. Moreover, the issue of whether defendant had a residence, when, despite saying he was staying in the home of his father who recently died or his cousin, he rented a hotel room at Par-A-Dice, further undermines a conclusion he could be confined at home or monitored by GPS monitoring.

¶ 23        We are not convinced the trial court needed to address the decision of the Peoria County court. The charges for the offenses were different and were based on distinct conduct. When the Peoria County charges were made and that petition for pretrial detention was considered, the Tazewell County charges had not yet been filed. Each court is given broad discretion in how to weigh the statutory factors and rule on the issues before it. The court's decision finding the conditions element proved is not " 'arbitrary, fanciful, or unreasonable.' " *Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 24        Defendant next argues the State failed to prove by clear and convincing evidence he posed a risk of willful flight.

¶ 25        We need not consider this argument on appeal. A defendant may be detained based on clear and convincing proof of dangerousness or willful flight. Compare 725 ILCS 5/110-6.1(a)(1)-(7) (West 2022) with *id.* § 110-6.1(a)(8). Given we have found no abuse of discretion in the trial court's decision detaining defendant on dangerousness grounds, we need not determine whether there was error on the willful-flight ground.

¶ 26        Last, defendant contends, under the doctrine of collateral estoppel, the State was

barred from seeking detention in Tazewell County after the Peoria County court released him under the same circumstances. The State counters this court lacks jurisdiction to consider the error. The State maintains Illinois Supreme Court Rule 604(h)(1) (eff. Dec. 7, 2023) only allows interlocutory appeals of orders entered under section 110-5, 110-6, and 110-6.1 of the Code and the order denying defendant's motion to dismiss does not fall within that rule's provisions.

¶ 27        Rule 604(h)(1) grants appellate courts jurisdiction over "an interlocutory order of court entered under sections 110-5, 110-6, and 110-6.1 of the Code." *Id.* The rule authorizes an appeal "by the defendant from an order denying pretrial release." Ill. S. Ct. R. 604(h)(1)(iii) (eff. Dec. 7, 2023).

¶ 28        Here, on his notice of appeal, defendant checked the box indicating he appeals the order denying his pretrial release. While defendant seeks a reversal of the trial court's order denying his motion to dismiss, defendant also seeks a reversal of the detention order—the latter of which falls within the plain language of Rule 604(h)(1)(iii) (*id.*). We have jurisdiction over the question of whether that detention order was properly granted. The propriety of that order turns, in part, on the applicability of the doctrine of collateral estoppel. Defendant's notice of appeal is timely and contains some argument the State is estopped from making a second attempt at denying him pretrial release. We find, therefore, we have jurisdiction under Rule 604(h)(1)(iii) to consider defendant's collateral-estoppel argument.

¶ 29        As to whether collateral estoppel bars the State from seeking defendant's detention in Tazewell County after the State's first attempt failed in Peoria County, our review is *de novo*. See *Hurlbert v. Charles*, 238 Ill. 2d 248, 254, 938 N.E.2d 507, 512 (2010). We find persuasive our decision in *People v. Randolph-Lewis*, 2024 IL App (4th) 240524-U. In *Randolph-Lewis*, the defendant argued "collateral estoppel barred the State from taking the

position, in the Boone County circuit court, that the Winnebago County DUI was detainable," as " 'the identical issue had been fully litigated by the State and a final judgment on the merits had been rendered' in Winnebago County." *Id.* ¶ 39. This court emphasized the well-established principle a judgment is not final for collateral-estoppel purposes until the possibility of appellate review is exhausted. *Id.* ¶ 40 (quoting *People v. Powell*, 349 Ill. App. 3d 906, 909, 812 N.E.2d 636, 639-40 (2004)). Because, in that case, the potential for appellate review had not been exhausted on the Winnebago County matter, that decision was not a final judgment and, therefore, not a bar to the Boone County decision. *Id.*

¶ 30        Like in *Randolph-Lewis*, the issue of defendant's pretrial detention was not a final judgment in Peoria County when the Tazewell County court ordered defendant detained. The State had 14 days to appeal the Peoria County decision denying its March 19, 2024, verified petition. See Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023)). Fourteen days had not passed when the Tazewell County court, nine days after the Peoria County court denied the State's petition to deny defendant pretrial release, granted the State's petition. There was no final judgment for collateral-estoppel purposes. Collateral estoppel does not apply.

¶ 31                          III. CONCLUSION

¶ 32        For the reasons stated, we affirm the trial court's judgment.

¶ 33        Affirmed.